IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 22-50-M-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| CUAUHTEMOC CERVANTES SAMAIEGO, | |
| Defendant/Movant. | |

Before the Court is Cuauhtemoc Cervantes Samaniego's ("Samaniego") 28 U.S.C. § 2255 Motion to Vacate Judgment and brief in support. (Docs. 82 & 83.) Samaniego, proceeding pro se, challenges the 87-month sentence imposed after he pled guilty to Possession with Intent to Distribute Fentanyl. *See e.g.*, Judg., (Doc. 71.) Samaniego alleges counsel provided ineffective assistance of counsel at sentencing and on appeal in violation of the Sixth Amendment. (Doc. 82 at 4.)

## I.    Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that

1

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  The Court is to review

the § 2255 "motion, together with all the files, records, transcripts, and

correspondence relating to the judgment under attack[.]" Rule 4(b), Rules

Governing Section 2255 Proceedings for the United States District Courts. A

district court must summarily dismiss a § 2255 application "[i]f it plainly appears

from the motion, any attached exhibits, and the record of prior proceedings that the

moving party is not entitled to relief." *Id.*  A petitioner "who is able to state facts

showing a real possibility of constitutional error should survive Rule 4 review."

*Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996)

("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254

Cases).  But the Court should "eliminate the burden that would be placed on the

respondent by ordering an unnecessary answer."  Advisory Committee Note

(1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note

(1976), Rule 4, Rules Governing § 2255 Proceedings.

## II.    Background

On October 6, 2022, a Complaint was filed charging Samaniego with

Possession with Intent to Distribute Fentanyl and Conspiracy to Distribute

Fentanyl.  (Doc. 1.)  The charge was handed down after Samaniego and another

individual were stopped outside of a gas station near Kalispell, Montana.  The

vehicle in which Samaniego was a passenger was searched; 12,000 fentanyl pills, a

2

semi-automatic pistol, and over $62,000 in cash was located and seized.  *See*, Aff. (Doc. 1-1 at 2-3.)

Samaniego appeared before the Magistrate Judge and pled not guilty to the criminal charge and denied the forfeiture allegation.  *See*, Min. (Doc. 16.)

A plea agreement deadline was set for December 22, 2022, and a jury trial was scheduled for January 3, 2023.  (Doc. 20.)  Due to pending pretrial motions, however, the jury trial was vacated.  (Doc. 26.)

On January 5, 2023, the Government filed a Superseding Indictment charging Samaniego with Possession with Intent to Distribute Fentanyl (Count I), Prohibited Person in Possession of Firearms and Ammunition (Count II), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count III), along with a Criminal Forfeiture allegation.  *See generally*, (Doc. 31.)

On January 25, 2023, following a hearing, Samaniego's *ex parte* motion for appointment of substitute CJA counsel was granted.  (Doc. 41.)  Mr. Seamus Molloy ("Molloy") was appointed to represent Samaniego.  (Doc. 46.) Samaniego's unopposed motion to continue the trial was granted.  (Doc. 48.)

On April 6, 2023, a Superseding Information was filed, charging Samaniego with one count of Possession with Intent to Distribute Fentanyl.  (Doc. 50.)  In response, Samaniego filed an unopposed Motion to Change Plea and a Plea Agreement.  (Docs. 51 & 52.)

On May 4, 2023, a change of plea hearing was held. (Doc. 56.) The Magistrate Judge accepted Samaniego's guilty plea to the Superseding Information

A Presentence Investigation Report was prepared. It calculated an advisory guideline range of 108 to 135 months, based upon a finding that the offense involved at least 1.2 kilograms but less than 4 kilograms of fentanyl. (Doc. 73 at 6, 10.)

Prior to the sentencing hearing, and pertinent to the present motion, Samaniego filed a sentencing memorandum in which he raised objections to the drug weight calculations contained within Presentence Investigation Report. (Doc. 62.)

Samaniego first presented an argument that he personally, rather than counsel, wished to make at sentencing. Samaniego contended that the overall drug weight was inaccurate because only the actual amount of fentanyl contained in the seized pills, rather than the total weight of the pills and/or carrier medium, should be considered. (*Id.* at 3.) In his memorandum, Samaniego explained that he had been studying the USSG during his incarceration and analogized the calculation of fentanyl weight to that employed for LSD. (*Id.*) He posited the proper manner of calculation should focus only on the weight of the dose contained within each pill and the calculation be derived therefrom. (*Id.* at 3-4.) To include the weight of the carrier medium, according to Samaniego, would produce unwarranted sentencing

4

disparities among offenders involving the same quantity of actual fentanyl in different forms.  (*Id.* at 3.)

Samaniego next challenged the determination that he be held accountable for 1,235.4 grams (1.2354KG) of fentanyl.  (*Id.* at 4.)  Relying upon the DEA lab results, which only tested 9 of the 11,973 pills seized from Samaniego, it was argued that it was not possible to determine with any degree of reasonable certainty whether all of the pills contained fentanyl.  Thus, it was improper under the circumstances to consider the entire net weight when calculating the base level offense of the advisory guideline range.  (*Id.* at 4-5.)  Accordingly, Samaniego argued he should only be held accountable for 70% of the units, or 8,381 pills.  (*Id.* at 5.)

The Government disagreed with Samaniego's objections.  (Docs. 63 & 69.) As to the first objection, the Government noted that Congress had determined that punishments for possession or distribution of fentanyl should be based on the wight of any "mixture or substance containing a detectable amount of fentanyl" rather than the weight of fentanyl alone.  (Doc. 69 at 1-2)(*citing* 21 U.S.C. § 841(b)(1)(A)(vi) and (b)(1)(B)(vi)).  Further, the Government pointed out that the United States Supreme Court upheld sentencing based upon the wight of a "dose" rather than the weight of the actual drug contained within each dose in *Chapman v. United States*, 500 U.S. 453, 466 (1991).  (*Id.* at 2.)  Accordingly, the Government

argued that the weight of the substance containing a detectable amount of fentanyl, in this case the weight of the pills recovered, was the appropriate metric in calculating the applicable guideline.  (*Id*.)

Relative to Samaniego's challenge to the lab results and testing, the Government asserted the extrapolation of the quantity of drugs had a sufficient indicium of reliability to support its accuracy and the estimate could properly be used at sentencing.  (Doc. 63 at 3-4.)  Specifically, the Government pointed to caselaw suggesting that a lab report's statistical certainty range did not foreclose a finding that 100% of pills contained fentanyl.  (*Id*. at 4)(*citing United States v. Dinh*, 920 F. 3d 307, 313 (9th Cir. 2019)).  It was further argued that the Ninth Circuit has applied similar extrapolations, and upheld the use of the purity of seized and tested drugs as an appropriate method of establishing a base-level offense, in methamphetamine cases.  (*Id*. at 4)(*citing United States v. Lopes-Montes*, 165 F. 3d 730, 732 (9th Cir. 1999).  Thus, the Government argued the evidence supported a finding that 1,235.4 grams of a substance containing a detectable amount of fentanyl was involved for assigning Samaniego a base-level offense of 32.  (*Id*. at 4.)

At sentencing, Samaniego presented his argument, with assistance from Molloy, relative to calculating the drug quantity of the fentanyl mixture under USSG 2D1.1, Note 9.  *See*, Trans.  (Doc. 79 at 7-9.)  Molloy argued the second

objection.  (*Id*. at 11-18.)

The first objection regarding the quantity was overruled and it was determined that the weight would be calculated based on the entire amount of pills as opposed to only the dosage of fentanyl found within each pill.  (*Id*. at 11.)  The second objection, however, relative to the laboratory reports was sustained.  *See*, Min. (Doc. 70.)  This resulted in a two-level adjustment to Samaniego's base level offense and a corresponding guideline range of 87 to 108 months, rather than 108 to 135 months.  *See*, Trans.  (Doc. 79 at 18-19, 21.)

To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), Samaniego was sentenced to the Bureau of Prisons, for 87 months, followed by a 4-year period of supervised release.  (Doc. 71.)  This sentence represented a low-end sentence of the adjusted advisory guideline range.

Although Samaniego waived his right to appeal his sentence in the plea agreement, *see* (doc. 51 at 7), he did appeal.  (Doc. 74.)  Ultimately, Molloy filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating there were no viable grounds for relief, along with a motion to withdraw as counsel of record. Despite being given an opportunity to file a supplemental brief, Samaniego elected not to do so.  Accordingly, appellate counsel's motion to withdraw was granted and the appeal was dismissed.  *See*, Ord. (Doc. 80.)

Samaniego timely filed his § 2255 motion on October 25, 2024.  *See*, 28

U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).  He asks that he be resentenced by applying the correct unit and drug dosage per unit, for a reduced sentence. (Doc. 82 at 13.)

### III.    Analysis

The Court has considered Samaniego's challenge to the validity of his sentence.  For the reasons explained below, the § 2255 motion will be denied and a certificate of appealability will not issue.

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).  In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255."  *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Ineffective Assistance of Counsel

Samaniego renews his argument advanced at sentencing and claims Molloy was ineffective by failing to effectively argue for the lower drug quantity amount, based on a calculation from the isolated weight of the individual fentanyl doses. (Doc. 82 at 4); *see also*, (Doc. 83 at 5-7.)  Samaniego also faults Molloy for failing to present this argument on direct appeal and instead filing an *Anders* brief.  (Doc. 82 at 4).  Samaniego asserts that *Chapman* should not apply to his case.  (Doc. 83 at 7-9.)

This claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Samaniego must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id*. at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id*. at 694.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the

limitations on investigation." *Id*. at 690-91. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

As a preliminary matter, Molloy's sentencing arguments, particularly as they related to the drug analysis and reporting, were conscientious and thorough. In fact, the undersigned observed:

> Well, this is an issue of first impression for me. No one has taken the effort, as painstakingly as Mr. Molloy has done here, to get into the actual testing protocols, the procedures out of the "Analysis of Drugs Manual."
>
> And, quite frankly, I find Mr. Molloy's argument to be persuasive, and so I'm going to sustain the objection, and the net result of which means that I'm going to utilize a base offense level here of 30 as opposed to 32.

*See*, Trans. (Doc. 79 at 17-18.) Molloy's successful argument resulted in a 2-level reduction in Samaniego's base offense level and evidences competent representation in this matter.

Moving on to Samaniego's argument presented in his motion and supporting brief, the fatal flaw is that it finds no support in the law. As pointed out by the Government in its objection at sentencing to this same argument, courts are to calculate offense levels for fentanyl possession and distribution based on the weight of the "mixture or substance containing a detectable amount" of fentanyl. 21 U.S.C. § 841(b)(1)(A)(vi). The guidelines further underscore this view and

explain that the default rule for calculating the weight of a controlled substance is its mixture weight.  U.S.S.G. § 2D1.1(c) Note A ("Unless otherwise specified, the weight of a controlled substance…refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.")  Because fentanyl is not otherwise specified, it is subject to the mixture rule.  Moreover, Samaniego's reliance upon the background comment to § 2D1.1 relating to calculating the weight of LSD contained within a carrier medium, *see* (Doc. 83 at 7), is unpersuasive because that provision explicitly applies to LSD, not fentanyl.  Similarly, his reference to Application Note 9, *see* (*id*. at 8), is inapposite because the weight of the controlled substance in this matter is known.

Finally, despite Samaniego's protestations that *Chapman* should not apply to him, it remains good law.  There, the Court concluded that Congress had a rational basis to "assign[ ] more severe penalties to the distribution of larger quantities of drugs" as measured by "street weight" as opposed to "the net weight of the active component."  *Chapman*, 500 U.S. at 465.  The Court also the rejected the disproportionality argument that Samaniego makes, finding that due process is not violated by mixture weight calculations when the drug cannot be easily separated from the mixture and is intended for sale and consumption in the mixture.  *Id*. at 453.  The fact that Samaniego may disagree with this analysis does not convert the issue into one of constitutional import.

It appears that Molloy understood the futility of Samaniego's argument. Nevertheless, he presented it in the sentencing memorandum, (doc. 62 at 3-4), and allowed Samaniego to advance the argument during the sentencing hearing. (Doc. 79 at 7-11.) But it cannot be said that Molloy's failure to independently bolster this argument during the sentencing proceedings or present the same on appeal amounts to deficient performance. Put another way, Molloy cannot be faulted for failing to litigate a meritless issue. *See Gonzalez v. Knowles*, 515 F. 3d 1006, 1016 (9th Cir. 2008)("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."); *Jones v. Ryan*, 691 F. 3d 1093, 1101 (9th Cir. 2012)("It should be obvious that the failure to an attorney to raise a meritless claim is not prejudicial."); *Rupe v. Wood*, 93 F. 3d 1434, 1445 (9th Cir. 1996)(noting a failure to take futile action can never be deficient performance); *Boag v. Raines*, 769 F. 2d 1341, 1344 (9th Cir. 1985)("Failure to raise a meritless argument does not constitute ineffective assistance.")

Samaniego cannot establish the first *Strickland* prong of deficient performance. If a movant is unable to make a showing under the first of *Strickland's* two prongs, this Court need not evaluate the second. *See Siripongs v. Calderon*, 133 F. 3d 732, 737 (9th Cir. 1998)("We have previously held that it is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong."). Accordingly, Samaniego's

12

motion must be denied.

### IV.    Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court.  28 U.S.C. § 2253( c)(1)(B).  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253( c)(2).  This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Under this standard, the Court concludes that Samaniego is not entitled to a certificate of appealability.  No reasonable jurist would find debatable Samaniego's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

Accordingly, IT IS ORDERED:

1.  Samaniego's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 82) is DENIED and DISMISSED for lack of merit.

2.  A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Samaniego files a Notice of Appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 24-153-M-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Samaniego.

DATED this 29th day of January, 2025.


*/s/ Dana L. Christensen*
Dana L. Christensen
United States District Court Judge